UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SEMBLER FAMILY PARTNERSHIP
#41, LTD,

    Plaintiff,

v.                                                           Case No. 8:08-cv-1212-T-24MAP

BRINKER FLORIDA, INC. and
BRINKER INTERNATIONAL, INC.,

    Defendants.
_____/

## ORDER

This cause comes before the Court on cross motions for summary judgment. (Doc. Nos. 45, 48, 50, 53, 56, 59.) Plaintiff Sembler Family Partnership #41, Ltd. ("Sembler") brought this suit to recover damages and declaratory relief from Defendants Brinker Florida, Inc. and Brinker International, Inc. (collectively, "Brinker") for Brinker's alleged repudiation of a commercial lease agreement. For the reasons stated herein, Brinker is entitled to summary judgment on all counts.

**I.    Background**

    **A.    The Lease**

The following facts are undisputed: On April 27, 2007, Sembler, as landlord, and Brinker, as tenant, entered into a lease agreement for a vacant commercial property located in a shopping center in Broward County, Florida, referred to by the parties as "West Commercial Blvd." Pursuant to their agreement, Brinker would lease the property from Sembler and construct its own building on the property. Brinker intended to construct a Chili's restaurant on

the property. The effective date of the lease was April 27, 2007, which was the date that Sembler signed it.

Construction on the property was not scheduled to be completed until well after the lease was signed. The lease required that Sembler perform certain site work on the Chili's outparcel before construction by Brinker would commence. That work, defined in the lease as "Landlord's Work," was scheduled to be completed by March 15, 2008.

Brinker was entitled to terminate the lease under certain conditions as follows:

> 6. <u>Conditions</u>. . . . Tenant shall be entitled to terminate this Lease by Notice delivered to Landlord within five (5) business days following the expiration of the following respective periods after the Effective Date (each of said periods hereafter being called a "Conditions Period"), in the event any of the following conditions shall remain unsatisfied, in Tenant's sole discretion, at the expiration of the respective period for such condition, . . .

One of the five conditions under which Brinker could terminate the lease, as referenced in paragraph 6, provided as follows:

> (e) On or before the earlier of (i) Landlord's completion of the portion of the Landlord's Work as set forth in <u>Paragraph 3(b)(i)</u> above, or (ii) March 15, 2008, *Tenant will be able to procure a general contractor and construction contract relating to the construction of the Tenant Improvements in an amount reasonably satisfactory to Tenant*.

(emphasis added). Hence, when read together, these provisions permitted Brinker to terminate the lease if it determined, "in [its] sole discretion," that condition (e) remained unsatisfied, or in other words, that it was unable to procure a general contractor or construction contract in an amount "reasonably satisfactory to [Brinker]." Furthermore, following paragraph 6(e), the lease provides that "in no event shall the conditions set forth in subsections (a), (b), (c) and (e) of this <u>Paragraph 6</u> expire unless and until Landlord has completed the portion of the Landlord's Work

2

as set forth in Paragraph 3(b)(i) above."

B.      **Brinker's Analysis Regarding Construction Costs**

Brinker has built and opened hundreds of restaurants throughout the United States, including in Florida, under the brands of Chili's, On the Border, Maggiano's, Romano's Macaroni Grill and others. Before approving a proposed restaurant site, a financial analysis, referred to as "Restaurant Site Approval," is performed to determine whether to approve or reject the proposed investment. This analysis includes estimating the sales "hurdle," which is the amount of sales that must be realized in order for the restaurant to deliver the desired return on investment. In November 2006, Brinker determined that the annual sales hurdle for West Commerical Blvd. was $3,528,000. The construction cost of the building was estimated to be $1,568,000.

In February of 2008, Brinker undertook efforts to determine whether it would be able to procure a general contractor and construction contract for the West Commercial Blvd. property. Due to changing conditions in the economy, declining returns in existing restaurants, and a need to change the internal rate of return for all Chili's restaurants, Brinker estimated the annual sales hurdle to be $3,787,000, approximately $250,000 more than what was estimated in November 2006. Clay Fuller, a director in Brinker's real estate department testified that the only way to bring the sales hurdle back in line with what was approved for West Commercial Blvd. would be to reduce the construction costs by $600,000. When the $600,000 amount is subtracted from the $1,500,000 construction cost originally budgeted, the difference of $900,000 became the amount that Brinker determined to be the maximum construction cost which would allow this project to be viable.

Jeff Smith, Brinker's vice president of restaurant development and former vice president of construction, testified that, because of the extensive nature of Brinker's historical generic construction database, it would be impossible for Brinker to obtain a construction contract for the required $900,000. Smith explained, "Brinker analyzed not only this, but . . . other projects to see if the project was still viable. . . . [T]he decision [that] . . . we could not obtain construction GC bid for $900,000 was an easy decision . . . because we know what our costs are in that region." In its interrogatory response, Brinker stated that "[i]t was not necessary for Brinker to enter into 'negotiations' with contractors in order to ascertain accurate construction costs and it would have been an exercise in futility to do so knowing that this project could not be built for the $900,000 amount that Brinker needed."

    C.    **Brinker's Termination of the Lease**

Once it decided to terminate the lease in accordance with paragraph 6(e), Brinker prepared a termination letter dated February 13, 2008. The letter states that "[Brinker] has determined that it will be unable to obtain a construction contract in an amount reasonably satisfactory to [Brinker] and has elected to terminate the above-referenced Lease effective immediately under its rights as set forth in Paragraph 6(e)." The letter was sent by Federal Express and delivered to Sembler's office on February 14, 2008. On February 25, 2008, Brinker director Clay Fuller sent an email to Sembler employee Andy Carlson attaching another copy of the termination letter. Carlton testified that he received the termination notice attached to that email, read the letter, and forwarded it to Sembler management.

On March 14, 2008, Sembler employee Kevin Floyd sent a letter to Brinker stating that the landlord deemed "the land and the work set forth in Sections 3(b)(i)(A) & (B) delivered as of

4

March 14, 2008." On March 28, 2008, in response to Sembler's "delivery letter," Brinker sent a letter to Sembler enclosing a third copy of the February 13, 2008 termination notice.

On April 10, 2008, Sembler's counsel sent a letter to Brinker stating that Sembler considered Brinker's purported terminated to be ineffective and untimely. He advised that Sembler disputed ever receiving the February 13, 2008 letter, and that the first time Sembler viewed the termination notice was when it opened Brinker's March 28th letter. He further advised that the work being performed by Sembler was completed on April 2, 2008, and therefore, even if Sembler had received the February 13 letter, Sembler would have considered it to be premature.

When the parties were unable to resolve their conflict, Sembler filed this action in May of 2008 contending that Brinker's termination of the lease was ineffective and untimely. In Count I, Sembler asserts a claim for damages against Brinker Florida, Inc. for its repudiation of the lease agreement due to its ineffective and untimely notice of termination. In Count II, Sembler asserts a claim for declaratory relief, in which it asks the Court to declare the rights, status, and legal relations of the parties under the lease. In Count III, Sembler asserts a claim for damages against Brinker International, Inc. based on the guaranty that it executed.

## II.     Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir.

2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Id.*

When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Id.* In determining whether there is a "genuine" issue, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## III. Discussion

Sembler contends that Brinker's purported termination constitutes an anticipatory breach of the lease entitling it to damages. Sembler asserts that Brinker failed to make a good faith and commercially reasonable effort to procure a construction contact and that its notice of termination was premature. Brinker, however, contends that its termination was reasonable and effective because, under the terms of the lease, it was permitted to terminate if construction costs were not satisfactory–a decision which it was permitted to make in its sole discretion. Brinker further contends that its notice of termination was timely under the plain terms of the contract.[1]

### A. Whether Brinker's Termination Was Effective

Sembler alleges that Brinker's termination was not reasonable within the meaning of

---

[1] Brinker's third argument is that, even if its termination was an improper repudiation of the lease, Sembler sustained no damages. The Court, however, need not consider this argument, as it finds that Brinker's termination was effective and timely under the express terms of the lease.

paragraph 6(e) of the lease because Brinker's purported reason for termination–inability to procure a construction contract–was pretextual. Sembler contends that Brinker fabricated this reason for termination, by lowering its desired cost of construction to compensate for its unilateral decision to increase its internal rate of return, because it determined that to proceed with the project would not be as profitable as originally projected. Moreover, Sembler contends, Brinker violated its obligations of good faith when it failed to solicit any bids for a construction contract before terminating the lease.

The Court, however, disagrees. As set forth above, paragraph 6(e) of the lease provided that Brinker was "entitled to terminate this Lease" in the event that certain conditions remained unsatisfied in Brinker's "sole discretion," one of which was the ability of Brinker to procure a general contractor and construction contract "in an amount reasonably satisfactory to [Brinker]." Hence, the lease permitted Brinker to terminate if it determined, in its sole discretion, that it was unable to construct the building at a cost reasonably satisfactory to Brinker.

Brinker's decision to terminate was reasonable under Florida law. In *Townsend v. First Federal Savings and Loan Assoc.*, 15 So. 2d 199 (Fla. 1943), mortgagors sought a declaratory decree concerning their rights to furnish an insurance policy under a mortgage that required that a policy be "in a good and responsible insurance company satisfactory to said mortgagee." *Id.* at 200. The lower court held that the insurance policy at issue was in a "good and responsible company," but not one which was "satisfactory to the mortgagee," and therefore dismissed the case. *Id.* The Florida Supreme Court affirmed the dismissal, holding:

> The inclusion of the phrase, "satisfactory to the party of the second part," must have had a purpose, and in the absence of fraud or legal wrong, as here, what more reasonable purpose could there have been than to give the second party, the mortgagee, a wide discretion in choice, so long as that discretion was not

7

exercised in an arbitrary, unreasonable and capricious manner.

*Id.* at 201.

For the same reason, Brinker is entitled to summary judgment here. The lease required that the amount of construction cost be satisfactory to Brinker. The lease could have, but did not, make the amount of construction cost simply a "reasonable amount," a specific or minimum amount, or an amount that was satisfactory to Sembler. Moreover, the Court is unaware of any evidence to show that Brinker acted in an arbitrary, unreasonable, or capricious manner in making its discretion to terminate. Rather, the budgeted construction cost of $1,500,000, which was acceptable to Brinker in 2006, was no longer acceptable to Brinker in 2008, after financial conditions affecting Chili's restaurants changed. Brinker determined, as it had a right to do, that only a construction contract in the maximum amount of $900,000 would be reasonably satisfactory to it.

Furthermore, the lease provides that the determination of what amount is satisfactory to Brinker is in Brinker's "sole discretion." Under Florida law, that "sole discretion" is not unlimited, as it is governed by the covenant of good faith, but it provides Brinker a high degree of discretion. In *Sepe v. City of Safety Harbor*, 761 So. 2d 1182 (Fla. 2d DCA 2000), the plaintiff contracted with the city to perform audits on franchise fees and taxes being paid by utility companies in exchange for a retainer and a percentage of the late fees and taxes recovered. *Id.* at 1183. The contract provided that the city could determine in its "sole discretion" whether to pursue an action for recovery. *Id.* The plaintiff sued for breach of contract because it failed to pursue certain claims. *Id.* In affirming summary judgment in favor of the city, the appellate court noted:

8

> [T]he reasonable commercial expectations protected by the covenant of good faith should cause the court to consider whether the party with sole discretion has abused its discretion in its [decision-making.] Unless no reasonable party in the position of the City would have made the same discretionary decision the City made, it seems unlikely that its decision would violate the covenant of good faith in this context.

*Id.* at 1185. The court held that the city satisfied its burden to establish that it properly exercised its sole discretion in deciding not to pursue certain actions for recovery. *Id.*

Similarly, *Earnie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285 (11th Cir. 2001), involved a dispute between Ford and one of its dealers concerning the relocation of a dealership. Under the dealership agreement, Ford reserved the right to determine in "its best judgment" the numbers, locations, and sizes of authorized dealerships. *Id.* The dealer appealed a summary judgment in favor of Ford on contract claims arising out of Ford's rejection of a proposed relocation of a dealership. *Id.* The Eleventh Circuit affirmed summary judgment, holding:

> To comply with [the] "best judgment" clause, Appellants say that Appellee was required to "gather sufficient information and perform an analysis to have a proper basis to exercise its 'best judgment' and at least follow its own guidelines and procedures." . . .
>
> We disagree. . . . [I]t is well settled that when the terms of a voluntary contract are clear and unambiguous, the contracting parties are bound by those terms, and a court is powerless to rewrite the contract to make it more reasonable or advantageous for one of the contracting parties. . . . The district court correctly characterized the plain meaning of the Dealership Agreement and section 9(a):
>
>> Under the Dealership Agreement, it is Appellee's *own* judgment that controls, not [Appellant's] judgment, not a jury's judgment and not a reasonable business person's judgment. Section 9(a) merely requires that Appellee use *its* best judgment in determining the relocation of its dealerships. This clear and unambiguous provision cannot be interpreted as opening the door for a jury to second-guess Appellee's judgment or as setting limits on Appellee's reasons for making a relocation determination.
>
> Turning to Appellants' second argument, the implied covenant of good

faith and fair dealing is a part of every contract under Florida law. But the implied covenant cannot override an express contractual term.

With the implied covenant, one party cannot capriciously exercise discretion accorded it under a contract so as to thwart the contracting parties' reasonable expectations. Yet, the limit placed on a party's discretion is not great.

*Id.* at 1290-91 (citations, quotations, and alterations omitted); *see also Burger King Corp. v. Ashland Equities, Inc.*, 217 F. Supp. 2d 1266 (S.D. Fla. 2002) (noting that "[u]nder Florida law, the limit placed on a party's discretion is not great" and that "a party's decision will not violate the implied covenant of good faith and fair dealing unless no reasonable party would have made the same discretionary decision") (citations and quotations omitted).

Here, Brinker relied on its experience in opening hundreds of restaurants in the United States and performed a financial analysis before determining whether to approve or reject the West Commercial Blvd. property. Brinker reevaluated the project in February of 2008. Due to changing conditions in the economy, declining returns in existing restaurants, and a need to change the internal rate of return for all Chili's restaurants, Brinker re-set the budget for construction costs at $900,000. It ultimately determined, based on its extensive, historical construction database, that it would be impossible to obtain a construction contract for that amount, and terminated the contract. Under these circumstances, the Court cannot find that "no reasonable person" would have made the same decision as Brinker.

Finally, the Court rejects Sembler's argument that Brinker was required to obtain bids from contractors before terminating. There was no condition in the lease that required Brinker to obtain bids from outside contractors rather than rely on its own construction cost data. When the terms of a voluntary contract are clear and unambiguous, as they are here, the Court cannot "rewrite the contract to make it more reasonable or advantageous for one of the contracting

10

parties." *Earnie Haire Ford, Inc.*, 260 F.3d at 1290. Accordingly, the Court concludes that Brinker's termination of the lease agreement was reasonable and effective under paragraph 6(e) of the lease.

### B. Whether Brinker's Termination Was Timely

Next, Sembler contends that Brinker's February 13, 2008 termination notice was premature, and therefore, ineffective, because it occurred more than a month before the conditions period specified in paragraph 6(e) had expired. According to Sembler's interpretation of the contract, Brinker could terminate only if the condition in paragraph 6(e) (i.e., Brinker's ability to procure a contractor and construction contract) remained unsatisfied at the time Sembler completed its work. Sembler asserts that if the condition remained unsatisfied at that time, Brinker had a five-day window to terminate or waive the condition. Sembler sent its notice that it had completed its work on March 14, 2008.[2] Brinker had a five-day window after that date within which to terminate, and therefore, its February 13, 2008 termination notice was more than a month premature.

The Court must reject this argument, however, because Sembler arrives at this conclusion by ignoring the words "after the Effective Date" in the sentence that permits delivery of the notice of termination "within five (5) business days following the expiration of the following

---

[2]Sembler has taken inconsistent positions regarding the date on which it completed its work. In its summary judgment motion, Sembler contends that it was Kevin Floyd's March 14, 2008 letter which constituted its notice to Brinker that its portion of the work was complete. (Doc. No. 48; p.4.) However, in his April 10, 2008 letter, Sembler's counsel states that Sembler's work was complete on April 2, 2008. (Doc. No. 45, Ex.S.) Nevertheless, the Court assumes that it was Sembler's March 14th letter that constituted its notice that the work was complete and that triggered the purported five-day window for termination. The issue here is whether Brinker could terminate the contract before the completion of Sembler's work, regardless of whether that date was March 14th or April 2nd.

11

respective periods after the Effective Date." When meaning is given to these words, notice can be delivered after the effective date (i.e., April 27, 2007) and not later than five business days following the expiration of the relevant condition (i.e., March 14, 2008). When interpreting a contract under Florida law, "[w]e must read the contract to give meaning to each and every word it contains, and we avoid treating a word as redundant or mere surplusage if any meaning, reasonable and consistent with other parts, can be given to it." *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1242 (11th Cir. 2009) (citations and quotations omitted). Sembler's argument is premised upon omitting the words "after the Effective Date," and therefore fails.

The Court agrees with Brinker that Sembler's interpretation–that there was only a "five-day window" during which notice of termination could be given–is absurd. It is a well settled rule of contract construction that "[c]ontracts should receive a construction that is reasonable, practical, sensible, and just." *7-Eleven, Inc. v. Stin, LLC*, 961 So. 2d 977, 981 (Fla. 4th DCA 2007). The Court wonders, as Brinker does, why would any landlord want to force a tenant to wait and remain silent concerning its decision to terminate until after the end of the conditions period, when this would result in more expenses incurred by the landlord and a delay in re-renting the property?

Moreover, even assuming that there was only a "five-day window" within which to give notice, and that Brinker's notice occurred before that window, the Court is persuaded by cases cited by Brinker in which courts have found that such early notices are effective. For example, *Goodyear Tire & Rubber Co. v. Kin Properties, Inc.*, 647 A.2d 478 (N.J. Super. Ct. App. Div. 1994), involved a twenty-five year lease with multiple renewal options which were required to

be exercised between six and nine months before the expiration of each respective term. The tenant renewed the second option almost a year before the three-month window for renewal. *Id.* The court found that the early renewal notice was effective, holding:

> A tenant is generally required to give ample notice of the exercise of an option to renew a lease so that the landlord is not forced to wait until the last day of the lease term before he is informed whether the tenant wishes to remain on the premises. This requirement substantially reduces the risk that the premises will remain unoccupied for an indefinite period in the event that the renewal option is not exercised. The plaintiff herein satisfied that purpose. There appears to be no discernable purpose to the earlier date of a window time period, such as the one herein, other than to provide a trap for the unwary.

*Id.* at 481. Likewise, here, Sembler's belief that there was only a "five-day window" for termination after the expiration of the various conditions, and that it could ignore any notice of termination that it received at any time before or after that five-day window, is unreasonable and creates a time trap. The Court concludes that Brinker's notice of termination, which Sembler admits receiving and reviewing shortly before the alleged five-day window, was timely and effective.

## IV. Conclusion

In conclusion, the Court finds that Brinker's termination of the lease agreement was effective and timely, and therefore, Brinker is entitled to summary judgment on all counts. Brinker's motion for summary judgment (Doc. No. 45) is **GRANTED**, and Sembler's motion for summary judgment (Doc. No. 48) is **DENIED**. The Clerk is directed to enter judgment in favor of Brinker Florida, Inc. and Brinker International, Inc. and against Sembler Family Partnership #41, Ltd., and to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 16th day of September, 2009.

Copies to:

Counsel of Record

SUSAN C. BUCKLEW
United States District Judge